CORA B. PULLIS and RIVERSIDE IRON WORKS COMPANY, Appellants and Respondents, v. PULLIS BROS. IRON COMPANY, HENRY BOEMLER, Assignee of Pullis Bros. Iron Company, CHRISTEN A. PULLIS, MRS. C. A. PULLIS, ST. LOUIS IRON & STEEL FOUNDRY CO., HARRIET PULLIS and CLARA PULLIS, Respondents and Appellants.

**St. Louis Court of Appeals, November 19, 1901.**

1. **Fees of Counsel: COSTS: RECEIVER: STATUTORY CONSTRUCTION.** Counsel fees for services rendered to a receiver, in the performance of his duties, by attorneys, are not costs, within the meaning of section 1547, Revised Statutes 1899, which provides that the prevailing party in civil actions or proceedings, shall recover his costs against the other party: or of section 755, Revised Statutes 1899, which directs the court to allow a receiver such compensation for his services and expenses as may be reasonable

and just, the same to be taxed as costs and paid as other costs in the case.

2. **Receiver:** EXPENSES OF IN CARING FOR PROPERTY. A receiver must take care of the property intrusted to him, and should be reimbursed for a reasonable outlay in doing so.

Appeal from St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft*, Judge.

AFFIRMED CONDITIONALLY.

### STATEMENT OF THE CASE.

A lucid and comprehensive statement of the facts out of which this litigation arose, may be found in the report of the opinion of the Supreme Court of Missouri in the case of Pullis et al. v. Pullis et al., 157 Mo. 565.

The suit was originally commenced by Cora B. Pullis filing a petition in the nature of a creditor's bill, in behalf of herself and other creditors, against Pullis Bros. Iron Company, an insolvent corporation. Later, the Riverside Iron Works Company joined as party plaintiff.

On the application of plaintiffs, a receiver of said Pullis Bros. Iron Company was appointed *pendente lite*. The receiver was put in charge of the assets of the company, including a manufacturing plant and several lots of ground. He was directed to hold the machinery subject to the orders of the court, collect the rents and profits of the real estate, insure the property in such sums as might seem advisable, and otherwise preserve and protect it, pending the further orders of the court. He was also empowered to bring and prosecute suits and legal proceedings, if they were needed in the discharge of his duties, and defend all that might be brought against him as receiver that would in anywise affect the property in his hands. Edward Cunningham, Jr., was the appointee, and he qualified and took possession of the property.

This appointment was made on the twenty-seventh day of November, 1899. An appeal was taken from it to the Supreme Court, where the order was reversed. Pursuant to the mandate of that court, the receiver was discharged on the nineteenth day of July, 1900. He filed a report of his doings while in charge, including a statement of his receipts and expenses, asking to have the same approved and for an allowance to himself and for counsel fees.

His total disbursements were eight hundred and seventy-four and forty one-hundredths dollars; his receipts were six hundred and ninety-two and fifty one-hundredths dollars, of which three hundred dollars were contributed by plaintiff, Cora B. Pullis, three hundred and fifty dollars were rents which he collected from the property in his hands, and forty-two and fifty one-hundredths dollars were received from insurance companies as a rebate on premiums of policies which he surrendered. Most of the real estate remained unrented during the receivership. The disbursements included five hundred and ten dollars paid to a watchman, whom he had to hire to watch the premises in order to get any insurance on the building and machinery; insurance premiums amounting to two hundred and twenty-seven and forty-five one-hundredths dollars, and other minor expenses. He was allowed five hundred and fifty dollars for his own compensation and two hundred and fifty dollars were allowed his counsel for their services. The total allowances were, therefore, sixteen hundred and seventy-four and forty one-hundredths dollars. This entire sum, except three hundred and fifty dollars collected for rent, was, in effect, taxed as costs against the plaintiffs; for the order of the circuit court taxed as costs the excess of the disbursements over the receipts, amounting to one hundred and eighty-one and ninety one-hundredths dollars; the five hundred and fifty dollars allowed the receiver, the two hundred and fifty dollars allowed his counsel and the excess

Pullis v. Pullis Bros. Iron Co.

of disbursements had been reduced to one hundred and eighty-one and ninety one-hundredths dollars, partly by the contribution of three hundred dollars made by plaintiff, Cora B. Pullis.

Plaintiffs say the following items should not be charged against them as costs.

| | |
|---|---:|
| The net cost of insurance | $227 45 |
| Wages of watchman | 510 00 |
| Repairs to building | 81 00 |
| Receiver's attorneys | 250 00 |
| Coal for use of watchman | 10 00 |
| Vaseline for lubricating engine | 50 |
| Coal oil, carpenter and door latch | 2 95 |
| Total | $1,081 90 |

Defendants, on the other hand, insist that the receiver should have been ordered to pay over the rent collected to Harriet and Clara C. Pullis, who were the owners of the property of which Cunningham was improvidently appointed receiver, and that he should also be made to account for the reasonable value of the rent of such portions of it as stood idle during the receivership. The latter claim is not pressed, the real contention being that those defendants were entitled to the rents the receiver collected and that every dollar of expense, pending the receivership, should be borne by plaintiffs. Both sides excepted to the order of allowance and, their exceptions being overruled, took this appeal.

The Supreme Court, in disposing of the litigation on its merits when the case was there, ruled all the issues against the plaintiffs, holding they had no standing whatever and that there was no just cause for putting the property in the hands of a receiver. The opinion concludes as follows:

"This disposes of all the points raised by counsel, or

stated in the pleadings or proofs, upon which the circuit court acted; and the conclusion is irresistible that instead of there being a strong probability of the plaintiffs ultimately succeeding in this case, no judgment for the plaintiffs could ever be rendered, or if rendered, could be allowed to stand. For this reason the order of the circuit court, refusing to revoke the order appointing a receiver, is reversed and the cause remanded to that court, with directions to set aside the appointment of the receiver and restore the property to the defendants who were in possession at the time the receiver was appointed."

*F. J. McMaster* and *Charles W. Bates* for Harriet Pullis and Clara C. Pullis.

(1) The mandate of the Supreme Court, directing the circuit court to set aside the appointment of the receiver and to restore the property to the defendants who were in possession at the time the receiver was appointed, required the restoration to them of the rents which issued out of their property while the receiver held possession, and which were collected by the receiver. Pullis v. Pullis Bros. Iron Co., 157 Mo. 593. (2) The allowance by the court, to the receiver, of compensation for his "service and expenses" must be taxed as costs against the losing party, the plaintiffs. R. S. 1899, sec. 755; R. S. 1899, sec. 1547; City of St. Louis v. St. Louis Gas Light Co., 11 Mo. App. 237; s. c., 87 Mo. 223. See also the following cases: City of St. Louis v. St. Louis Gas Light Co, 70 Mo. 121; Morse v. Railroad, 72 Mo. 588; Railroad v. Wear, 135 Mo. 230.

*Johnson, Houts, Marlett & Hawes* and *Taylor, Harlan & Powers,* for Cora B. Pullis and Riverside Iron Works Company.

(1)   The costs of administration of the receivership should be taxed against the property in the receiver's possession.   City of St. Louis v. St. Louis Gas Light Co. 11 Mo. App. 243; 87 Mo. 224; New Birmingham Iron & Land Co. v. Blevens, 12 Tex. Civil App. 410.   (2)   If the property remained in the hands of the receiver, his expenses in taking care of it are a charge upon the property regardless of ownership.   Heise v. Starr, 44 Ill. App. 406; Penn Co., etc., v. Railroad, 13 U. S. C. C. App. 550; Heman v. Button, 88 Mo. 549.   (3) The expenses incurred by the receiver were such that the same would have been incurred had the property remained in the possession of defendants, and are therefore a proper lien upon the real estate.   Cutter v. Pollock (N. D.), 59 N. W. Rep. 1062.   (4) The court has ample authority to make the charge a lien upon the real estate.   Ellis v. Vernon Ice Co., 86 Tex. 109; Penn Co., etc., v. Railroad, 13 U. S. C. C. A. 550.   (5)   The title to the property passed to the receiver upon his appointment.   Maynard v. Bond, 67 Mo. 315.

GOODE, J.—I.   As to the receiver's own compensation, that was undoubtedly properly taxed against the plaintiffs.   The point has been already adjudicated, both by this and by the Supreme Court: it is no longer open.   City of St. Louis v. St. Louis Gas Light Co., 11 Mo. App. 237; Id., 87 Mo. 223.   We do not understand the plaintiffs to challenge this item.

II.   It was decided, in the case just cited, that counsel fees for services rendered to a receiver in the performance of his duties, by attorneys, are not costs, within the meaning of section 1547, Revised Statutes 1899, which provides that the prevailing party, in civil actions or proceedings, shall recover his costs against the other party; or of section 755, which directs the court to allow a receiver such compensation for his

services and expenses as may be reasonable and just, the same to be taxed as costs and paid as other costs in the case. City of St. Louis v. St. Louis Gas Light Co., 11 Mo. App. 243; Id., 87 Mo. 224. A distinction is drawn between costs of administration and of litigation, by which the latter must be taxed against the losing party, but the former need not in all circumstances. Counsel fees are classed as costs of administration. We have then a precedent directly in point. But it was not decided therein, that such expenses *must necessarily be paid out of funds in the hands of the receiver*. As we understand the opinion of this court in that case, which was adopted and approved by the Supreme Court, the circuit court, where the receivership proceedings are had, should order counsel fees paid out of the trust fund in the hands of the receiver, if the services of the attorneys were rendered in the interest of the receivership or trust; but might, in its discretion, tax such fees as costs against the losing party, if the necessity or utility of the legal services was not shown. This will appear, if we attend to the opinion of the circuit court in that case, which was quoted in Judge Thompson's opinion. It is therein said:

"Defendant's counsel contend, as I understand them, that, as he (namely; the attorney whose fee was questioned) was employed to do, and did, much of the distinctive work of the receiver, the allowance of compensation to him was in substance a further allowance of salary to the receiver, who virtually paid his own counsel, and that the amount so paid is taxable as costs, as additional receiver's salary. There is no proof before the court as to the character of services rendered by the attorney, and in its absence I can not presume the facts to be as claimed. The record only shows the payment from time to time during the receivership, of the aggregate amount of eleven thousand dollars for professional services, and that the amounts so paid were included in the final amicable ac-

counting between the receiver and the defendant. From these facts I must presume that the payments so made were for services in the interest of the trust, like those of any other employee of the receiver, and were properly paid out of the trust-fund, and can not now be taxed as costs against the plaintiff." Judge Thompson, after quoting the above excerpt, said: "We agree with this view."

We think the effect of the decision is, to leave the matter of allowing counsel fees, for services rendered by an attorney to a receiver and the determination of whether such fees shall be paid out of the receivership property or taxed against the losing party, to the discretion of the chancellor, subject to revision if the discretion is abused. This has always been the rule in equity in regard to that and any other expense incurred by a receiver. Robinson v. Land Co., 80 Mo. App. 621; Howes v. Davis, 4 Abb. Pr. 71; How v. Jones, 60 Iowa 70; Hoyt on Receivers (8 Ed.), sec. 805. The foregoing decision is that our statutes have not changed the rule as to counsel fees. Nor does the opinion in St. Louis K. & S. R. Co. v. Wear, 135 Mo. 230, alter the rule. That decision disallowed compensation and expenses to one as a receiver, who was, in fact, no receiver at all, because the court appointing him acted in excess of its jurisdiction. But the opinion expressly states that a receiver's allowance for such expenses does not depend on the correctness of his appointment, if the court had power to make it; thus deciding the precise point here mooted, namely: whether the expenses may be allowed if the court thinks they were meritorious although the receiver's appointment was ill-advised.

There is nothing in the present record to show what services the attorneys rendered, or whether they were at all necessary and subserved the interest of the estate. The chancellor below taxed the sum allowed them against the plaintiffs, and we would not be justified in reversing his ruling

without evidence before us to prove he abused his discretion. Greely v. Provident Sav. Bank, 103 Mo. 212. This exception is, therefore, ruled against the plaintiffs.

III.   Protecting property from loss by fire by insuring it, repairing damage done by a storm, and the other items of expense stated in the receiver's account, except the expenses for a watchman, were obviously properly incurred in preserving the estate for the benefit of everyone interested in it. They were such expenses as the owners would likely have incurred themselves in the exercise of sound business management.   We think no one has a right to complain of the payment of those items out of the income of the property, and that the rents were justly devoted to that purpose.   A receiver must take care of the property intrusted to him and is reimbursed for a reasonable outlay in doing so.   Brown v. Hofenhurst, 54 Md. 26; Thompson v. Phoenix Ins. Co., 136 U. S. 287.   What is said in the paragraph above concerning the distinction between costs of administration and of litigation, is also pertinent here.   We overrule the exception of Harriet and Clara C. Pullis to the court's action in appropriating the rent money collected by the receiver to pay these items as far as it was needed.   The amount of said items is three hundred and eleven dollars and ninety cents, leaving a balance from rents of thirty-eight dollars and ten cents in the receiver's hands.   Whether the expense of hiring a watchman and providing coal for his use should be paid out of the property or charged against plaintiffs, as costs, depends somewhat on circumstances.   If a watchman was insisted on by the insurance companies as a condition of accepting risks on the buildings, because the property was in litigation and in the hands of a receiver, the plaintiffs, who groundlessly began the action, ought to bear the expense; but perhaps not, if a watchman would have been required anyhow.   No proof is before us, and we must presume in favor of the circuit court's

action. Stern v. Foltz, 152 Mo. 552; Woodsworth v. Tanner, 94 Mo. 124. It is very doubtful, at best, whether an owner should be forced to bear such charges *nolens volens*, because some claimant has had his property impounded by a court. We will let that item stand where the court below put it.

IV. The three hundred dollars contributed to the receiver by Cora B. Pullis simply reduced the amount of costs which she would have to pay, or for which she is liable.

The decree is modified by ordering that the receiver pay to Harriet Pullis and Clara C. Pullis said balance of thirty-eight dollars and ten cents accruing from rents, and with that modification is affirmed, the plaintiffs to pay the costs of this appeal. All concur.